STATE OF MAINE
CUMBERLAND, SS



SUPERIOR COURT
DOCKET NO. CV-05-313

CHRISTOPHER RANEY and
THOMAS HALLETT, TRUSTEE
OF THE PAMELA D. RANEY TRUST,

    Plaintiffs

      vs.

VAN MEER & BELANGER, P.A.,
KELLY YOUNG, and NANCY
DUTTON

    Defendants

ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

This case comes before the Court on Defendant Nancy Dutton's Motion for Summary Judgment, Defendant Van Meer and Belanger, PA and Kelly Young's Motion for Summary Judgment and Defendant Van Meer and Belanger, PA and Kelly Young's Second Motion for Summary Judgment.

## BACKGROUND

Before her death, Pamela Raney created the Pamela Raney Trust (the "Trust). The Trust was funded with 375 shares of the common stock of Mechanical Services, Inc. ("MCI"). Pamela Raney's son, Christopher Raney ("Raney") is a beneficiary of the Trust. Nancy Dutton, Pamela Raney's sister, was the former Trustee of the Trust. Attorney Kelly Young of the law firm Van Meer and Belanger, P.A represented the Trustees of the Trust, including Dorothy Dutton and later Nancy Dutton.

In 2001, Raney brought suit against Nancy Dutton ("Dutton"), formerly Nancy Drury, in her capacity as Trustee of the Trust. In that suit, Raney

complained that Dutton failed to properly administer the Trust by refusing to sell MSI stock to the Dead River Company. Raney also alleged that Dutton had taken steps to reduce or prevent Raney's inheritance from his grandparents, her parents. The parties reached a settlement and Dutton was released from liability. The release broadly stated that Dutton and her attorneys were released from liability.[1]

In February 2004, Raney brought a second action against Dutton seeking to remove her as Trustee. Raney complained that Dutton had breached her fiduciary duty to Raney and the Trust by using knowledge gained as Trustee in reducing Raney's inheritance from his grandparents. The parties again reached a settlement and executed a mutual release and indemnity agreement. Similar to the 2001 release, the 2004 release also stated that Raney released Dutton and her attorneys from "all claims including but not limited to all claims which were or could have been asserted."[2] Van Meer and Belanger, P.A. ("VB") and attorney

---

[1] The 2001 release states:
    2. <u>Releases</u>
          (a) <u>Raney does hereby release</u> and forever discharge the Trust, the Corporation, <u>Drury and Green and their respective heirs, personal representatives, trustees, officers, directors, shareholders, employees, contractors, agents, attorneys,</u> successors and assigns from all debts, claims, causes of action, suits, contracts, controversies, agreements, promises, doings, omissions, variances, damages and liabilities.
    (emphasis added).

[2] The 2004 release states:
        We, Christopher Raney, individually and in all other capacities including but not limited to Beneficiary of the Pamela D. Raney Trust and on behalf of the Trust and as beneficiary of either Robert or Dorothy Dutton or both (hereinafter "Raney") and Nancy Button (formerly Drury), individually and in all other capacities including but not limited to Trustee of the Pamela D. Raney Trust and on behalf of the Trust and as beneficiary of either Robert or Dorothy Dutton or both (hereinafter "Dutton"), each referred to as "Party", being of lawful age and fully represented by counsel, hereby for ourselves, our heirs, personal representatives, administrators, predecessors, successors and assigns, release, acquit, and <u>forever discharge the other Party, their heirs, personal representatives, administrators, attorneys,</u> predecessors, successors and assigns of and from any and all actions, causes of action, claims or demands for removal, breach of duty, fraud or constructive fraud, damages, costs, contribution, indemnification, or any other thing whatsoever on account of, related to, arising from or in any way growing out of

Kelly Young ("Young") were not litigation counsel to Dutton as Trustee in the 2001 and 2004 litigation.

Notwithstanding these two settlement agreements, Thomas Hallet, the current Trustee of the Trust, and Christopher Raney have filed an action concerning the same events leading up to the two previous settlements. The difference here is that the Trust is the Plaintiff complaining against Dutton on behalf of the Trust, as opposed to its beneficiaries, for breach of fiduciary duty for refusing to sell MSI to Dead River Company and reducing Raney's inheritance from his grandparents (Count II). The Trust also complains against VB and Young for negligence (Count I), and breach of fiduciary duty (Counts II & III). Finally, Christopher Raney complains personally against VB for breach of fiduciary duty (Count IV), infliction of emotional distress (Count V), fraud (Count VI), and tortious interference with expectancy (Count VII).

## DISCUSSION

First, Dutton and VB argue in their motions for summary judgment that although the Trust is bringing this action on its own behalf, under Maine Law, a Trust may act only for the benefit of its beneficiaries, Raney in this case. As such, because Raney has released both Dutton and VB from further liability, he has relinquished his interest in this matter and the Trust's suit fails. In response, Plaintiffs argue that Maine law allows a Trust to bring suit against a former Trustee on its own behalf. They further argue that VB was not a released party under either of the previous releases.

---

any and all known and unknown matters from the beginning of the world to and including the date on which Nancy Dutton resigns as Trustee of the Pamela D. Raney Trust, including but not limited to all claims which were or could have been asserted in the lawsuit now pending described above.
(emphasis added).

Second, VB asserts in its second motion for summary judgment that the alleged injurious events occurred more than six years ago. As such, VB argues that the action is barred because the statute of limitations has run. In response, Plaintiffs argue that they have not been able to determine the exact dates of the alleged offenses by VB because the Court has stayed discovery. Specifically, Plaintiffs believe that VB was involved with the representation of the Trust after April 26, 1999, but have been unable to depose counsel for VB. Plaintiffs are asking the Court pursuant to M.R. Civ. P. 56(f), to deny VB's application for judgment, or in the alternative, to enlarge the time within which Plaintiffs must respond, either 60 days after discovery is reinstated, or an additional 14 days for filing after the first motions for summary judgment are resolved.

The Court reviews a motion for summary judgment in the light most favorable to the non-moving party to determine whether the parties' statements of material fact and the referenced record evidence indicate any genuine issue of material fact. *Bayview Bank, N.A. v. The Highland Gold Mortgagees Realty Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 451. Summary judgment is appropriate when material facts are not in dispute and the evidence is insufficient to support a verdict for the plaintiff as a matter of law. *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

a.     The Releases as to Dutton

Dutton argues that she was released from further litigation arising from her role as Trustee in both the 2001 and 2004 releases. Plaintiffs argue, however, that the previous settlements released Dutton from further action by Raney, and that the present suit is not Raney's, but rather the Trust's on behalf of its own interests.

4

The parties do not dispute that Raney settled and released Dutton from liability concerning her role as Trustee.[3] The issue before the Court then is whether a Trust has the authority to act on its own behalf when its beneficiary has released his claim in the matter.

Under Maine law, prior to July 1, 2005, 18-A M.R.S.A. § 7-301 (repealed), and according to the new Uniform Trust Code, 18-B M.R.S.A. §§ 801, 802 (Supp. 2004), the primary role of a Trustee is to administer the trust in the interests of the beneficiaries. Unlike the Maine Business Corporation Code, 13-A M.R.S.A. § 202, which clearly states that corporations have the capacity to sue or be sued as an entity, Maine law on trusts has no comparable language. It follows that absent a valid claim of its beneficiaries, a trust has no authority to act. It is undisputed that, in this case, Raney has relinquished his interest in any further action concerning the events of the previous two settlements with Dutton. The law requires that a Trust must be acting at all times in the interests of its beneficiaries. Absent any interest of the beneficiary, the Trust has no independent standing to sue on its own behalf.

The Trust also argues that the releases are ineffective, both because the beneficiary of a spendthrift trust cannot release a trustee from liability for breach of trust, and because the releases had been fraudulently obtained. §§ 216 and 217

---

[3]      The parties have not established disputed facts material to this issue. Plaintiffs argue that VB and Young improperly controverted their Opposition Statements of Material Facts by referring to Plaintiffs' complaints, which resulted in the 2001 and 2004 settlements. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, 770 A.2d 653. In *Levine*, the Law Court indicated that a non-moving party's reference to its own complaint and to a conclusory affidavit of its own attorney was insufficient to support his statement of material facts. Here, VB and Young, the moving parties, cited to Plaintiffs' complaints from the 2001 and 2004 cases in order to establish the exact claims that Dutton and her attorneys were released from. This case is distinguishable from *Levine*, where the non-moving party put forth little effort to controvert the moving party's motion for summary judgment. Here, VB and Young have cited to Plaintiffs prior complaints to demonstrate the actual claims that were brought. This was a proper record citation.

of the Restatement (Second) of Trusts are clear that the beneficiary of a spendthrift trust may release a trustee from liability for breach of trust, so long as the release is obtained after the beneficiary has been informed of all material facts. The question, then, is whether Raney was informed of all material facts prior to having signed the releases.

Raney asserts in ¶ 26 of his opposing statement of material facts that Christopher Green, the President of MSI, who eventually purchased the shares of stock that made up the Trust, has recently informed him that Dutton had failed to go through with the Dead River sale because she was upset that Raney and the Trust would benefit from the sale, and that she would receive nothing from it. However, Raney also asserts in his brief opposing Dutton's motion for summary judgment that, during the litigation, Dutton had maintained that Christopher Green was, at least in part, to blame for the failure of the Dead River deal, for having provided false information to that company. Setting aside any question of admissibility and without deciding Raney's Rule 56(f) motion requesting further discovery, Christopher Green's alleged recent statement to Raney does not suffice to generate a genuine issue of material fact concerning Dutton's failure to inform Raney of all material facts prior to Raney signing the releases. Raney released Dutton from liability without taking the opportunity to depose Christopher Green. This choice was made with full knowledge that Christopher Green was allegedly involved in the failure of the Dead River deal, and in consideration of whatever settlement agreement was on the table. Accordingly, Dutton's motion for summary judgment is GRANTED.

b.      The Releases as to VB

The language of both releases clearly states that Dutton and her attorneys are released from liability regarding the events leading up to both settlements. The only genuine issue of material fact in dispute is whether VB and Young represented Dutton alone, or whether they also simultaneously represented Raney. Raney asserts that in his opinion, VB and Young represented him on several matters from 1996-1999. He further asserts that VB represented him in the proposed purchase of the MSI stock by the Dead River Co. in 1999. (Pl. Add. SMF ¶¶ 18-22). As such, he argues that VB and Young were not released from liability.

In response, VB denies it represented Raney personally. (D. Reply SMF ¶¶ 18, 19, 22). VB explains that in its representation of the Trustees of the Trust, it was involved with Raney as a beneficiary, and at times the Trust's interests and Raney's interests were consistent. In 1996, VB asserts that Raney was represented by attorney Don Carter, who negotiated on Raney's behalf with VB, who represented the then acting Trustee, Dorothy Dutton, for monthly payments that would be made to Raney by the Trust. (D. Reply SMF ¶¶ 18). Further, in 1999, Young accompanied Raney to the closing of his house, however, she explained in writing that she was not representing him personally, but rather the interests of the Trust, which were consistent with his interest in the sale of his home. (Young, Second Affidavit; Exhibit 1).

Although it appears from the submissions of the parties that VB did not represent Raney, but rather the Trustees of the Trust, this presents a genuine issue of material fact to be decided by a jury. The Court is not at liberty to make factual determinations.

c.    VB's Second Motion for Summary Judgment

This brings the Court to the final motion for summary judgment based on a running of the statute of limitations. VB argues that Plaintiffs complain of actions occurring more than six years before the filing of this action in May 2005. 14 M.R.S.A. § 752. Plaintiffs fault VB and Young for their role in drafting agreements involving the sale of MSI in 1997 and for their alleged simultaneous representation at that time of parties with conflicting interests. Plaintiffs also allege that VB and Young failed to adequately advise Raney regarding changes to his grandparents' estate plans in 1998 and early 1999. VB asserts that its involvement in this matter ended on April 26, 1999, when it referred the estate planning work to another attorney. As such, the actions complained of all took place more six years prior to the commencement of this suit and are therefore time barred.

Plaintiffs disagree with Young's affidavit asserting the extent of VB's representation and when the representation of Dutton terminated. However, because discovery has been stayed since January 4, 2005, Plaintiffs contend that they have been unable to retain documents from VB and Young concerning their previous representation of Dutton. Primarily, Plaintiffs believe that VB and Young were involved in some capacity after the April 26, 1999 referral to another attorney. Plaintiffs would like to depose Young and the referring counsel on this matter. This is a reasonable request and should be granted on the limited issue of when VB and Young terminated their representation in this matter. Plaintiffs shall also be able to obtain document discovery on this limited issue. The discovery period should be short such that this matter may be resolved promptly.

WENDELL LARGE ESQ
PO BOX 9545
PORTLAND ME 04112

*Van Muir & Belanger Young*

THOMAS HALLETT ESQ
PO BOX 7508
PORTLAND ME 04112

*—Hallett Raney*

JAMES BOWIE ESQ
PO BOX 4630
PORTLAND ME 04112

*—Hallett*

LEE BALS ESQ
100 MIDDLE STREET EAST TOWER
PORTLAND ME 04101-4102

*—Dutton*